# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

CHAMBERS OF
## JOEL A. PISANO
UNITED STATES DISTRICT JUDGE

Clarkson S. Fisher Courthouse
402 East State Street
Trenton, NJ 08608
(609) 989-0502

## LETTER OPINION
## ORIGINAL TO BE FILED WITH THE CLERK OF THE COURT

Re:     *R.I., Inc. et al. v. Michael McCarthy, et al.,* Civil Action No. 06-1021 (JAP)

Dear Parties,

Currently before the Court is a motion by defendants, Michael McCarthy, Director of the New Jersey Department of Labor and Workforce Development ("NJDOL"), Raymond Smit, an Assistant Chief at the NJDOL, and Theodore Tardiff, also an Assistant Chief at the NJDOL, to dismiss the complaint in this action based upon the abstention principles promulgated by the United States Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Plaintiff has opposed the motion. For the reasons set forth herein, to the extent the complaint seeks injunctive and declaratory relief, the Court find abstention under *Younger* to be appropriate and dismisses those claims. To the extent the complaint seeks money damages, the Court shall stay those claims pending final resolution of the related state court proceeding.

## I.  Background

Plaintiff, R.I., Inc., who does business as "Seating Solutions," is a New York corporation engaged in the business of manufacturing, selling, leasing, assembling and installing "seating audience [and] spectator seating systems." *See* Complaint at ¶ 2. Plaintiffs Lisa Suprina, Scott Suprina and Tony English are officers and directors of the corporation. Seating Solutions is a registered contractor with the NJDOL. This case arises as a result action taken by the NJDOL against Plaintiffs for alleged violations of the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25, *et seq.* (the "Wage Act"), and the New Jersey Wage Payment Act, N.J.S.A. 34:11-4.1, in connection with several public works projects in New Jersey during the period February 2005 to May 2005. The NJDOL alleged Plaintiffs committed various violations such as unpaid or late wages, failure to pay prevailing wages, and records violations.

In October 2005, the NJDOL notified Plaintiffs of its intent to debar Plaintiffs from eligibility to be awarded any contract for public work in New Jersey, and sought the collection of unpaid wages, administrative fees and penalties from Plaintiffs. In response, Plaintiffs argued that the employees of Seating Solutions, through their union, had waived the benefits of prevailing wage law in a collective bargaining agreement in exchange for layoff protection

and also that application of the Act is preempted by federal law governing the collective bargaining process.  Shortly thereafter, on November 10, 2005, Plaintiff's filed[1] their complaint in this case alleging that defendants undertook the above-described investigation and related actions as part of a conspiracy to drive Plaintiffs' business out of the state of New Jersey in favor of "local residents and/or members of NJ Carpenters Local 1342."  Compl. at ¶ 31.  Plaintiffs brought their claims pursuant to 42 U.S.C. § 1983 and allege that defendants' actions violated various of their constitutional rights, including due process and equal protection.[2]  The complaint is brought against defendants in both their official and individual capacity, for injunctive relief and monetary damages, respectively.[3]

The NJDOL's action was referred to the Office of Administrative Law and a hearing was held before an Administrative Law Judge ("ALJ") June 28-29, 2006.  On August 25, 2006, the ALJ issued his decision in which he rejected Plaintiffs' arguments and affirmed the enforcement action by the NJDOL.  On October 13, 2006, the Commissioner of the NJDOL issued his final decision accepting and adopting the findings, conclusions and recommendations of the ALJ.  The Commissioner ordered that Plaintiffs be debarred for a period of three years and that they pay a total of $57,965.96 in wages, fees and penalties. Plaintiffs have appealed the Commissioner's decision to the Appellate Division of the Superior Court of New Jersey.

In the instant action, Plaintiffs seek an injunction enjoining defendants from further action against Plaintiffs, money damages and declaratory relief.  Plaintiffs seek a declaratory

---

[1]The case was originally filed in the Eastern District of New York and subsequently transferred to the District of New Jersey in March 2006.

[2]Specifically, Plaintiffs allege defendants violated the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and deprived Plaintiffs of their "property rights, liberty of contract, right of livelihood, under the First, Ninth and Fourteenth Amendments of the United States Constitution, and the right to be free" from the restraint of interstate commerce.  Compl. at ¶ 61

[3] With respect to the distinction between official capacity and individual capacity, the Supreme Court in *Kentucky v. Graham* 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) has explained that:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.  Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

judgment stating that (1) the Wage Act is unconstitutional; (2) the administrative charges against Plaintiffs are unconstitutional, null and void; (3) certain defenses that defendants may potentially raise are unconstitutional; (4) an Executive Order promulgated by former New Jersey governor James McGreevey creating "Project Labor Agreements" is unconstitutional; (5) Plaintiffs and their agents "have a right to negotiate a waiver of a known right within a collective bargaining agreement;" and (6) Plaintiff's existing Collective Bargaining Unit grants eligible employees certain benefits of financial value to employees that can be credited to meeting the requirements of the Act.

## II. Discussion

Defendants argue that the abstention doctrine of *Younger v. Harris* require dismissal of the instant complaint. *Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings. *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Plaintiffs, on the other hand, argue that abstention is not appropriate because (1) they are not seeking to enjoin the state proceeding; (2) "exceptional circumstances" exist that would warrant the granting of federal injunctive relief in connection with a pending state court action; and (3) they are seeking monetary as well as injunctive relief.

Despite Plaintiffs claim that they are not expressly seeking to enjoin the state court action, there is no doubt that the relief they seek in the instant action would directly interfere with the ongoing state proceeding. Therefore, this Court must examine whether abstention pursuant to *Younger* is warranted. The Supreme Court has set forth a three-part test that this Court must apply in order to determine whether abstention is proper. *Younger* abstention is appropriate when: (1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the state proceeding affords an adequate opportunity to raise constitutional challenges. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982).

To the extent that Plaintiffs seek injunctive relief and declaratory relief, all three of these requirements are met. First, the state proceedings are judicial in nature, as the administrative action is presently under appeal in the Superior Court of New Jersey. *See id.* at 432 ("The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved.").

Second, the proceedings implicate important state interests. Notably, the importance of the state's interest is measured by considering the significance of the interest broadly, rather than by focusing on the state's interest in the resolution of an individual case. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989). In this case, the action taken by the NJDOL against Plaintiffs implicates the state's interest in "safeguard[ing] efficiency and general well being [of workmen engaged in public works] and . . . protect[ing] them as well as their employers from the effects of

serious and unfair competition resulting from wage levels detrimental to efficiency and well-being." N.J.S.A. 34:11-56.25.

Also, whether the nature of the state proceedings are "'quasi-criminal' also plays a role in assessing the significance of the state interest." *See Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 618 (9ᵗʰ Cir. 2003) (citing *Ohio Civil Rights Comm'n.*, 477 U.S. at 627-28 & n. 2, 106 S. Ct. 2718 (addressing significance of requirement that the proceedings be "judicial in nature"); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (discussing application of *Younger* to "quasi-criminal" proceedings); *Juidice v. Vail*, 430 U.S. 327, 335, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) (same); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975) (holding that *Younger* abstention extends to a state civil proceeding "which in important respects is more akin to a criminal prosecution than are most civil cases")). In the state proceeding here, the NJDOL sought to bar Plaintiffs from participation in public projects in New Jersey, as well as the collect certain monetary penalties, thus the proceedings were quasi-criminal in nature. The state's interest in administering such proceedings without interference is therefore significant.

Third, the state proceeding allows Plaintiffs an adequate opportunity to raise their constitutional challenges. The Third Circuit has noted that the third part of the *Garden State* test "is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination." *O'Neill v. Philadelphia*, 32 F.3d 785, 792 (3d Cir. 1992).

The *Garden State* factors having been met, Plaintiffs argue that abstention is not warranted because of the existence of "exceptional circumstances." First, without pointing to anything specific, Plaintiff argue that such exceptional circumstances exist because the complaint is "replete" with allegations of "irreparable injury [that] is both great and immediate." Pl. Brf. at 4-5. However, contrary to Plaintiffs' assertions, the Court finds that Plaintiffs have not alleged irreparable injury, as it does not appear that Plaintiffs have alleged any harm for which they do not have an adequate remedy at law. *Trainor v. Hernandez*, 431 U.S. 434, 441-42 & n. 7, 97 S. Ct. 1911, 52 L. Ed.2 d 486 (1977) (a finding of exceptional circumstances requires showing of irreparable harm).

Plaintiffs also argue (again, without pointing to anything in particular) that the complaint contains allegations of "bad faith, harassment or other unusual circumstances calling for equitable relief," and, therefore, abstention is not appropriate. Pl. Brf. at 4-5. Federal courts may intervene where a state court proceeding is conducted in bad faith or is motivated by a desire to harass. *See Huffman*, 420 U.S. at 611. Courts have generally considered three factors in determining whether a state proceeding is commenced in bad faith or to harass:

(1) whether the prosecution is frivolous or undertaken without reasonable expectation of obtaining a valid conviction; (2) whether it was motivated by

the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through unjustified and oppressive use of multiple prosecutions.

*Nernberg v. City of Pittsburgh*, 50 F. Supp. 2d 437, 441 (W.D. Pa. 1999) (citations and quotations omitted).

Plaintiffs complaint asserts that the NJDOL instituted its investigation of Plaintiffs shortly after a contentious dispute arose between Plaintiffs and a local carpenters union regarding work on a particular public works project. It is alleged that a union representative threatened to interfere with Plaintiffs' work on the project and claimed to have "influence and good friends" at the NJDOL and County Executive's office. Compl. at ¶ 29. Plaintiffs further allege that the subsequent investigation of Plaintiffs by the NJDOL was initiated by defendants to "intimidate the plaintiffs, and drive them out of the state of New Jersey in favor of local residents or Members [of the local carpenters union]." Compl. at ¶ 31.

However, despite the implication that the NJDOL's investigation was improperly connected to Plaintiffs' dispute with the union, Plaintiffs have not alleged that the individual defendants were even aware of, much less had any involvement with, Plaintiffs' dispute with the union. *See Nernberg*, 50 F. Supp. 2d at 441 (where plaintiff alleged that citations for building code violations were issued in retaliation for plaintiff prevailing in lawsuits against the city, bad faith exception did not apply absent allegations that individual defendants were involved in or were aware of lawsuits). Moreover, after Plaintiffs were afforded an administrative hearing, an ALJ affirmed the NJDOL's enforcement action, therefore it cannot be said that the enforcement action was brought without any chance of success on the merits. Also, it appears that all of violations alleged by the NJDOL relevant to the instant complaint were addressed in one proceeding before the ALJ and are presently being addressed in a single appeal before the Appellate Division, so this is not a situation where a plaintiff was subject to multiple prosecutions or lawsuits. *See, e.g., Krahm v. Graham*, 461 F.2d 703, 705-707 (9th Cir. 1972) (finding bad faith where city officials filed over 100 cases against plaintiff despite acquittals in the first eleven).

Consequently, the Court finds that the exceptional circumstances and bad faith exceptions to the *Younger* doctrine do not apply to preclude abstention in the present case.

With respect Plaintiffs' claims for money damages against defendants in their individual capacities, which claims were completely unaddressed by defendants' motion, Plaintiffs are correct that the abstention principles of *Younger* do not apply. *See Deakins v. Monaghan*, 484 U.S. 193, 203-04, 108 S. Ct. 523, 98 L. Ed. 2d 529 (1988) ("even if the *Younger* doctrine requires abstention here, the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding."). Therefore, to the extent that Plaintiffs are seeking money damages, the Court

must retain jurisdiction over this claim and will stay the action pending resolution of the state proceeding.

**III. Conclusion**

     For the reasons stated above, to the extent that the complaint seeks injunctive and declaratory relief, defendants' motion is granted and such claims are dismissed.  To the extent the complaint seeks money damages, the Court shall stay such claims pending final resolution of the related state action.  An appropriate order accompanies this opinion.

Date:   March 5, 2007                                   /s/ JOEL A. PISANO_____
                                                        United States District Judge