<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RI INC. d/b/a, SEATING SOLUTIONS, LISA SUPRINA, SCOTT SUPRINA, and TONY ENGLISH,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL McCARTHY, RAYMOND SMID, and THEODORE TARDIFF,<br><br>Defendants. | Civil Action No.: 06-1021<br><br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on two motions: (1) Plaintiffs RI, Inc. d/b/a Seating Solutions, Lisa Suprina, Scott Suprina, and Tony English (collectively, "Plaintiffs") motion for partial summary judgment, and (2) Defendants Michael McCarthy, Raymond Smid, and Theodore Tardiff ("Defendants") motion for summary judgment based on qualified immunity.

I

RI, Inc. is a New York corporation engaged in the business of installing, assembling, and maintaining seating systems. Its principles consist of President Lisa Suprina, Vice-President Scott Surpina, and Secretary Tony English. During the period beginning in February 2005 and ending in May 2005, RI, Inc. performed public work as a subcontractor in the form of seating

1

system installation at three projects: Saddle Brook High School ("Saddle Brook"), South Mountain Arena ("South Mountain"), and Community Park in West Windsor Township ("West Windsor").

The United Federation of Maintenance Installers & Assemblers of Audience & Spectator Seating Systems (the "United Federation"), a union comprised entirely of RI, Inc. employees, formed in early 2005. On April 30, 2005, RI, Inc. executed a collective bargain agreement ("CBA") with the United Federation.[1]

According to Plaintiffs, in April 2005, representatives of the New Jersey Regional Council of Carpenters (the Carpenters") requested a meeting with RI, Inc.'s Vice-President Scott Surpina and United Federation representatives. Plaintiffs claim that, after the meeting, the Carpenters initiated an enforcement action by the New Jersey Department of Labor and Workforce Development against RI, Inc.

The New Jersey Division of Labor and Workforce Development, Division of Wage and Hour Compliance (the "DWHC") investigates and enforces labor standards, including but not limited to the New Jersey Prevailing Wage Act (the "PWA"), and its implementing regulations. At all relevant times, Mr. Theodore Tardiff served as a District Supervisor in the DWHC's Public Contracts Section. As District Supervisor, Mr. Tardiff supervised the field representatives that investigate public work projects in Southern Jersey. As part of his duties, Mr. Tardiff reviewed field representative files, including investigative reports and audits. At all relevant times, Mr. Raymond Smid served as DWHC Section Chief. As Section Chief, Mr. Smid

---

[1] There are a number of factual questions surrounding the existence of the CBA.

supervised several district supervisors and clerical staff, including District Supervisor Theodore Tardiff. Mr. Smid reviewed files transmitted by district supervisors, specifically assessments of wages, fees, and penalties. Mr. Smid also reviewed any recommendations of debarment. At all relevant times, Michael McCarthy served as DWHC Director. As Director, Mr. McCarthy reported to the Assistant Commissioner. Furthermore, Mr. McCarthy reviewed any recommendations for debarment. These three individuals authorized the investigation of RI, Inc.

On May 4, 2005, Mr. Smid sent a letter to RI, Inc. requesting payroll documents for work performed for the West Windsor project. On May 19, 2005, Mr. Smid sent a subpoena to RI, Inc. demanding that it produce payroll documents for the West Windsor project. On June 6, 2005, Mr. Smid sent a letter to RI, Inc. requesting records for work performed on the Saddle Brook project. On June 16, 2005, Mr. Smid sent a letter to RI, Inc. requesting payroll records for work performed on the South Mountain project. On July 18, 2005, Mr. Smid sent a subpoena to RI, Inc. demanding payroll records for work performed at the South Mountain project. After some internal discussions between, among others, Mr. Tardiff and Mr. Smid, on September 7, 2005, Mr. McCarthy approved RI, Inc. for initial notices of debarment for the Saddle Brook, West Windsor, and South Mountain projects.

On or about October 11, 2005, the Public Contracts Section of the DWHC of the DOL notified Plaintiffs that it had conducted an inspection of the firm, had determined that they were in violation of the PWA with regard to public works projects at Saddle Brook, South Mountain, and West Windsor and was seeking certain penalties. The notice from the DOL included notices of violations sent by Mr. Smid and a notice that debarment is being considered sent by Mr. McCarthy.

On November 10, 2005, Plaintiffs filed a complaint in the U.S. District Court for the Eastern District of New York against Defendants alleging multiple civil rights deprivations under 42 U.S.C. § 1983.[2] The case was transferred to the U.S. District Court for the District of New Jersey on Defendants' motion on March 6, 2006.

On June 28 and 29, 2006, the Office of Administrative Law conducted a plenary, evidentiary hearing of Plaintiffs' alleged violations which were documented through the investigation. On August 26, 2006, the OAL issued an initial decision upholding the DOL's administrative action for debarment and payment of wages, fees and penalties. Afterwards, the Commissioner of Labor issued a Final Order adopting the OAL's initial decision. Plaintiffs appealed to the Appellate Division of the Superior Court.

On March 5, 2007, this Court dismissed Plaintiffs' equitable relief claims, and stayed their damage claims pending final resolution of a related state court proceeding. On October 19, 2009, following the resolution of the state court proceeding,[3] the case was reopened.

During the course of the proceedings, Plaintiffs abandoned the majority of their claims. At present, Plaintiffs' sole contention is that the PWA, as applied by Mr. McCarthy, Mr. Smid, and Mr. Tardiff in their individual-capacities, is preempted by both the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 151 *et seq.*, and the Labor Management Relations Act ("LMRA"),

---

[2] Plaintiffs also advanced a civil rights conspiracy cause of action under 42 U.S.C. § 1985(3), but stipulated to its dismissal in their December 6, 2010 brief in opposition to Defendants' Motion for Summary Judgment. *See* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, at 16, fn. 5.

[3] In the state court proceeding, the OAL's decision was upheld in the relevant part by the Appellate Division and Plaintiffs' petition for certification to the New Jersey Supreme Court was denied.

29 U.S.C. § 185. Defendants challenge this assertion and argue that Plaintiffs' claim must be dismissed because Defendants are entitled to qualified immunity.

## II

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to a material fact exists only if a reasonably jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). Such a fact is considered material only if the fact may affect the outcome of the litigation based on the substantive law. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

After a party files a motion for summary judgment along with supporting papers, the non-moving party "must produce specific facts showing that there is a genuine issue for trial." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109 (3d Cir.1985) (citation omitted). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990) (*citing* Fed.R.Civ.P. 56(e)).

## III

While the applicability of the NLRA is in issue, especially given the open questions

surrounding RI, Inc.'s CBA with United Federation, there is little doubt that any claims against the Defendants must be dismissed because Defendants are entitled to qualified immunity.

Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Lane*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982)). Government officials are entitled to qualified immunity unless: (1) the allegations underlying the claim, if true, substantiate the violations of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known. *Hope v. Pelzer*, 536 U.S. 730, 736-39 (2002). Mere allegations that defendants violated constitutional provision are insufficient to demonstrate a violation of a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Leaving aside the possibility that Plaintiffs have experienced a violation of a federal statutory or constitutional right, the alleged violation was not the sort of clearly established right of which a reasonable person would have known. The PWA and its method for establishing prevailing wage rates has been held constitutional. *Male v. Earnest Renda Contracting Co.*, 122 N.J. Super. 526, 533-34 (App. Div. 1973) *aff'd* 64 N.J. 199 (1974), *cert den.* 419 U.S. 839 (1974). To ensure that public contractors are operating within the PWA's ambit, DWHC is empowered to investigate contractors performing public work. N.J.S.A. 34:11-56.31. After an investigation and determination that a contractor has failed to pay the prevailing wage, DWHC may assess and collect wages, fees and penalties, as well as debar the offending contractor. N.J.A.C. 12:60-7.3; N.J.A.C. 12:60-8.3; N.J.A.C. 12:60-8.4.

Defendants participated in a departmental investigation of a contractor registered with DWHC and actively performing public work in New Jersey. N.J.S.A. 34:11-56.31. The investigation yielded violations of the PWA resulting in assessment of wages, fees, penalties and recommendation of debarment. Defendants participation in the investigation was objective reasonable and sustained by the process and outcome of the state court proceedings. Plaintiffs have not identified any actions that were inconsistent with a clearly established right. Thus, the claims against Defendants in their individual capacity are dismissed because Defendants are entitled to qualified immunity.

## IV

This Court has reviewed all submissions and heard oral argument. For the reasons set forth in the above Memorandum,

IT IS on this 29 day of ~~August~~ September 2011,

ORDERED that Defendants' Motion for Summary Judgment (Docket Entry #75) is granted; and

ORDERED that Plaintiffs' Motion for Summary Judgment of Certain Claims (Docket Entry #76) is denied.

PETER G. SHERIDAN, U.S.D.J.

7